UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DONNA ROMANELLI,                              :
                                              :
                         Plaintiff,           :
                                              :
          -against-                           :                    **OPINION AND ORDER**
                                              :                    CV-11-4908 (DLI)
MICHAEL J. ASTRUE, Commissioner of            :
Social Security                               :
                                              :
                         Defendant.           :
-------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Donna Romanelli ("Plaintiff") filed an application for disability insurance benefits ("DIB") under the Social Security Act (the "Act") on January 6, 2010. (R. 98.)[1] By a decision dated May 19, 2011, Administrative Law Judge Andrew S. Weiss (the "ALJ") concluded that Plaintiff was not disabled within the meaning of the Act. (R. 8-25.) On August 16, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-6.)

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g). The Commissioner moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. (*See* Docket Entry No. 11.) Plaintiff cross-moves for judgment on the pleadings, seeking reversal and remand pursuant to the fourth sentence of 42 U.S.C. § 405(g). (*See* Docket Entry No. 9.)

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's cross-motion is granted, and the matter is remanded for further administrative proceedings consistent with this opinion.

---

[1] "R." citations correspond to numbered pages in the certified administrative record. (Docket Entry No. 13.)

## BACKGROUND

### A.      Testimonial Evidence

Plaintiff was born in 1956.  (R. 30.)  She graduated from high school, but did not attend college.  (*Id.*)  Plaintiff worked as a secretary at Campus Magnet High School ("Campus Magnet") for seventeen years, but left the position on October 1, 2009, the onset date of Plaintiff's purported disability.  (R. 13, 30-31.)  Plaintiff has not been employed since.  (*Id.*)

On April 19, 2011, Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  (R. 26-40.)  Plaintiff testified that she quit working at Campus Magnet after being exposed to methane gas from an open sewer line at the school.  (R. 31-33.)  Plaintiff also noted that the methane leak affected her supervisor, other co-workers, and students.  (R. 33.)  Plaintiff received workers' compensation benefits due to her condition.  (R. at 31.)

Plaintiff testified that she suffers from frequent coughing, vertigo, chest tightness, and shortness of breath.  (R. 32-37.)  She also noted that she has developed a sensitivity to automobile exhaust fumes, air fresheners, and ordinary perfumes, all of which cause her to have coughing fits.  (R. 35.)  Additionally, Plaintiff claimed that her coughing fits at times prevent her from carrying on phone conversations with others.  (R. 35-36, 38-39.)  As to medication, Plaintiff stated that her prescribed inhaler did not stop the coughing fits.  (R. 32.)  Plaintiff also noted that Imitrex, a prescription medication, provides temporary relief, but makes her feel drowsy. (R. 36.)

Plaintiff testified that her condition is so severe that she cannot use public transportation, drive long distances, climb more than a flight of stairs, walk more than one city block, or lift heavy items.[2]  (R. 32, 35, 37, 38.)  Plaintiff noted that she has not taken the subway or bus since October 2009, because there are too many stairs, smells, and fumes.  (R. 34.)  Plaintiff also stated

_____

[2] Plaintiff testified that her sister drove her to the evidentiary hearing.  (R. 32.)

that she no longer participates in any regular activities outside of her home, but instead spends her days watching television.  (R. 32, 36-37.)  Plaintiff indicated that she also feels dizziness from standing.  (R. 37.)  Further, Plaintiff claimed she relies on her two sons to perform all household chores, as she is unable to complete them due to her condition.  (R. 39.)

**B.**  **Medical Evidence**

**1.**  **Medical Evidence Prior to the Onset Date**

Before the October 1, 2009 onset date, Plaintiff received treatment from four physicians: Dr. Gary Freeberg, Dr. Lauren Orent, Dr. Aboaba Afilaka, and Dr. Kenneth Altman.  Plaintiff was also examined by Dr. Scott Andes in connection with her workers' compensation claim.

*i.*  *Dr. Freeberg*

On January 23, 2008, Plaintiff visited Dr. Gary Freeberg, a pulmonologist.  (R. 143.)  Dr. Freeberg reported that Plaintiff's work environment caused her medical condition.  (*Id.*)  Dr. Freeberg opined that since Plaintiff's condition improved after leaving work, Plaintiff's condition did not require additional medical intervention.  (*Id.*)  On April 16, 2008, Dr. Freeberg examined Plaintiff for the second time and diagnosed a minimal reactive airway disease that "seem[ed] to be exacerbated by the workplace."  (R. 144.)  Dr. Freeberg noted that a spirometry test produced a normal result and advised Plaintiff to use Mucinex and Sudafed as needed.  (*Id.*)

*ii.*  *Dr. Orent*

By letter dated June 23, 2008, Dr. Lauren Orent indicated that she examined Plaintiff on seven occasions in connection with Plaintiff's complaints of coughing, sinusitis, and rashes.  (R. 145.)  Similar to Dr. Freeberg, Dr. Orent noted that Plaintiff's symptoms resolved when she was out of the workplace.  (*Id.*)  Dr. Orent also noted that Plaintiff had been placed on antibiotics, nasal steroids, antihistamines, steroid cream, and inhalers.  (*Id.*)

### iii. Dr. Afilaka

On October 1, 2008, Plaintiff visited Dr. Aboaba Afilaka, an occupational medicine specialist, complaining of cough, chest tightness, sinus and nasal irritation, and headache. (R. 169-76.) Dr. Afilaka noted that Plaintiff had swollen inferior turbinates and prolonged expiration while breathing and ordered further pulmonary testing, the results of which revealed no obstruction or restriction. (R. 169-76, 180.) On July 29, 2009, Dr. Afilaka examined Plaintiff again and diagnosed a reactive airway disease, chronic rhinitis, and chronic laryngitis. (R. 160.) Dr. Afilaka prescribed Albuterol to use as needed, particularly when "wheezing gets provoked by exertion." (*Id.*)

### iv. Dr. Altman

Dr. Kenneth Altman examined Plaintiff on October 20, 2008. (R. 181.) Dr. Altman noted that Plaintiff was mildly hoarse, with frequent throat clearing. (R. 182.) Dr. Altman diagnosed chronic rhinitis with reactive airway disease and possible cough-related laryngopharyngeal reflux. (*Id.*) Dr. Altman based his opinion on a flexible fiberoptic laryngoscopy and recommended aggressive treatment, including taking Astelin and Nexium, as well as diet and behavior modification. (*Id.*)

### v. Dr. Andes

On September 16, 2009, Dr. Scott Andes examined Plaintiff in connection with her workers' compensation claim. (R. 153-55.) Based on the examination and Plaintiff's medical history, Dr. Andes diagnosed reactive airway disease, chronic rhinitis, chronic laryngitis, and gastroesophageal reflux. (R. 154.) Dr. Andes opined that, with exception of gastroesophageal reflux, Plaintiff's medical conditions were caused by Plaintiff's exposure to methane gas. (*Id.*)

## 2. Medical Evidence After the Onset Date

As detailed below, after the onset date of October 1, 2009, multiple sources examined Plaintiff and provided assessments of her medical condition.

### i. Dr. Afilaka

Dr. Afilaka examined Plaintiff again on October 7, 2009. (R. 161-62.) Dr. Afilaka, consistent with his previous findings from April 1, 2009, diagnosed reactive airway disease, chronic rhinitis, and chronic laryngitis based on a pulmonary function test and a methacholine challenge test. (*Id.*) Additionally, Dr. Afilaka reported a severe mid airway flow obstruction, pink nasal mucosa, and swelling of both inferior turbinates. (R. 161.) Dr. Afilaka advised Plaintiff to "continue requesting for relocation from her boss;" he also opined that Plaintiff's condition had "become severe enough at this time to remove her from her work place." (*Id.*) Dr. Afilaka prescribed Albuterol HFA to be used as needed, he also advised Plaintiff to use a saline nasal sinus rinse, take Nexium, and avoid exposure to anything that might provoke wheezing or shortness of breath. (*Id.*) In addition to his diagnosis on October 7, 2009, Dr. Afilaka made similar findings on January 13, 2010, March 3, 2010, May 12, 2010, June 16, 2010, August 18, 2010, October 20, 2010, December 22, 2010, March 9, 2011, and April 6, 2011. (R. 157-58, 243-58.)

### ii. Dr. Andes

Dr. Andes examined Plaintiff for the second time on December 2, 2009 in connection with her workers' compensation claim. (R. 150-52.) Like before, Dr. Andes diagnosed a reactive airway disease, chronic rhinitis, chronic laryngitis, and gastroesophageal reflux. (R. 151.) Dr. Andes noted that Plaintiff stated that she would return to her previous work on January 2, 2010, but opined that "[s]ince it appears that the working environment gave [Plaintiff] this

condition, it is questionable whether she should go back to that place of work." (R. 151-52.) Dr. Andes opined that Plaintiff exhibited a mild temporary disability as a result of her exposure to methane gas, but that "[i]t appears at this time that [Plaintiff] is able to perform her usual duties." (*Id.*) Finally, Dr. Andes noted that Plaintiff still required further treatment for her condition. (*Id.*)

### iii. Dr. Kelly

Dr. Lori Kelly performed a computed tomography (CT scan) on October 23, 2009. (R. 149.) Based on the CT scan, Dr. Kelly diagnosed a mild chronic bilateral maxillary sinusitis and an obstruction of the right ostiomeatal complex. (*Id.*)

### iv. Dr. Shohet

Dr. Michael Shohet, an allergist, examined Plaintiff on January 27, 2010 and June 30, 2010. (R. 227-30.) Dr. Shohet noted Plaintiff suffered from persistent headaches despite aggressive therapy for sphenothmoid recess disease. (R. 230.) Dr. Shohet examined Plaintiff again on October 26, 2010 and November 9, 2010. (R. 215-20.) After performing nasal endoscopy, Dr. Shohet diagnosed chronic ethmoidal sinusitis. (R. 219-20.) Dr. Shohet also examined Plaintiff on February 16, 2011, and diagnosed cough, chronic maxillary sinusitis, and chronic ethmoidal sinusitis. (R. 238.)

### v. Dr. Orent

On February 4, 2010, Dr. Orent completed a medical questionnaire regarding Plaintiff's impairment at the request of the Division of Disability Determination. (R. 185-89.) Dr. Orent noted a spirometry test had previously been performed, and that Plaintiff suffered from an obstructive airway disease, chronic rhintis, and laryngitis. (R. 186-87.) Dr. Orent also indicated that Plaintiff's current symptoms included chronic coughing and a sore throat. (R. 186.)

However, despite these conditions, Dr. Orent opined that Plaintiff had no restriction to lift, carry, stand, walk, sit, push, or pull.  (R. 188-89.)

> vi.    Dr. Teli

Dr. Iqbal Teli performed a consultative examination on April 2, 2010.  (R. 190-96.)  As his diagnosis, Dr. Teli wrote, "history of asthma."  (R. 192.)  Dr. Teli noted that Plaintiff had a normal gait, could walk on heels and toes without difficulty, could cook, clean, and do laundry once a week, and could shower, bathe, and dress herself seven days a week.  (R. 190.)  Dr. Teli also noted that Plaintiff appeared to be in no acute distress and had a normal gait and stance.  (*Id*.)  Dr. Teli reported that a spirometry test showed normal results.  (R. 192.)  Dr. Teli reported that Plaintiff should avoid dust and respiratory irritants due to her history of asthma.  (R. 192.)

> vii.    Dr. Varma

Dr. Vikas Varma, a neurologist and treating physician of Plaintiff, examined Plaintiff on December 7, 2010.  (R. 221.)  Dr. Varma reported positive results from a Hallpike test and a Romberg test and diagnosed peripheral vestibulopathy with vestibular migraines.  (R. 221-22.)  Dr. Varma also noted that Plaintiff had a normal gait and prescribed Depakote and scheduled a videonystagmography ("VNG") test.  (*Id.*)

Dr. Varma examined Plaintiff again on February 9, 2011.  (R. 223.)  Dr. Varma reported that Plaintiff retained good strength.  (*Id.*)  Dr. Varma also reported that VNG and MRI tests were pending, and prescribed Imitrex and Antivert.  (*Id.*)  Dr. Varma opined that the possibility of vertigo related to chronic rhinosinusitis could not be excluded.  (*Id.*)  Lastly, Dr. Varma opined that Plaintiff's disability was "moderate" at that time.  (*Id.*)  That same day, Dr. Varma drafted a letter requesting a VNG test to confirm the diagnosis of vertigo and vestibular therapy.

(R. 224.)  In the letter, Dr. Varma noted that Plaintiff had significant dizziness with balance disorder, unsteady gait, and difficulty in performing routine activities.  (*Id.*)

On April 15, 2011, Dr. Varma completed a medical source statement regarding Plaintiff's ability to work.  (R. 225-26.)  Dr. Varma indicated that Plaintiff's suffered from dizziness, vertigo, and gait imbalance.  (*Id.*)  Dr. Varma opined that Plaintiff suffered from impairments and could only occasionally lift or carry up to maximum of ten to fifteen pounds, and stand or walk up to fifteen minutes without interruption and for total of one to two hours in an eight-hour workday.  (*Id.*)  Further, Dr. Varma noted that Plaintiff needed to avoid heights, moving machinery, noise, and fumes.  (*Id.*)  Dr. Varma also noted that Plaintiff could occasionally climb, balance, stoop, crouch, and kneel, but could never crawl.  (*Id.*)  Dr. Varma based his opinion on positive results from a Hallpike test and a Romberg test.  (*Id.*)

### viii.     Dr. Boutis

Dr. Loukas Boutis, a cardiologist, examined Plaintiff on March 2, 2011.  (R. 239-41.) Dr. Boutis reported that Plaintiff was not in respiratory distress, but had normal respiratory rhythm and a normal gait.  (*Id.*)

### ix.     Dr. Fulco

On March 24, 2011, Dr. Osvaldo Fulco, a physician with a subspecialty in pulmonary disease, reviewed certain evidence contained in the administrative record and completed interrogatories regarding Plaintiff's ability to work.  (R. 83-84, 204-13.)  Dr. Fulco reported that he had sufficient medical evidence to form an opinion about the nature and severity of Plaintiff's impairments.  (R. 204.)  Dr. Fulco opined that Plaintiff did not meet criteria listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (R. 206.)  According to Dr. Fulco, Plaintiff had the capacity for light work, and could (i) lift or carry up to twenty pounds; (ii) sit up to two hours without

interruption and for total of up to six hours in an eight-hour workday; and (iii) stand or walk up to one hour without interruption and for total of six hours in an eight-hour workday. (R. 208-13.) Lastly, Dr. Fulco opined that Plaintiff needed to avoid dust, fumes, odors, smoke, and temperature extremes. (R. 207.)

## DISCUSSION

### I.      Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations."

*Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

## II.    Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they

significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## III.     ALJ's Decision

The ALJ followed the five-step process and determined that Plaintiff could perform her past relevant work as a secretary, and, therefore, was not disabled. (R. 11-21.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2009, the date she allegedly became disabled. (R. 13.) At step two, the ALJ found that Plaintiff's restrictive airways disease qualified as a severe impairment. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments, individually or combined, did not meet one of the impairments listed in Appendix 1.[3] (R. 14.)

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a secretary and retained the RFC to perform a full range of work at "all exertional levels,"

---

[3] Plaintiff does not dispute the findings of the ALJ for steps one, two, and three.

provided that the work environment remain free of "hazardous pollutants."  (R. 15-21.)  In reaching this conclusion, the ALJ specifically noted that (1) he gave "considerable weight" to opinions of Dr. Teli and Dr. Fulco, neither of whom treated Plaintiff for her illness, and (2) declined to give controlling weight to Dr. Varma, one of Plaintiff's treating physicians.  (R. 20.) In explaining why he accorded less weight to Dr. Varma, the ALJ stated as follows:

> [T]he undersigned finds that Dr. Varma's medical opinion is not supported by other substantial evidence in the case record as well as is inconsistent with other evidence in record as well as internal findings.  He reported that a brain MRI did not reveal any abnormalities.  He also reported severe progressive vertigo, but had not performed any neuro-vestibular testing . . . .

(*Id.*)

Moreover, the ALJ concluded that, while Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible.  (R. 16, 20.)

## IV.    Application

### a.    Failure to Accord Proper Weight to Medical Evidence

Plaintiff contends that the ALJ failed to provide good reasons or properly explain his decision to give the opinion of Dr. Varma, Plaintiff's treating physician, less than controlling weight, while giving "considerable weight" to the opinion of Dr. Fulco, a non-examining source. (Mem of Law in Support of Pl.'s Cross Mot. for J. on the Pleadings ("Pl. Mem.") 13-16.) Plaintiff further asserts that the ALJ should have recontacted Dr. Varma to address perceived conflicts and ambiguities before determining that Dr. Varma's opinion was not entitled to controlling weight.  (*Id.* at 14-15.)  The Court agrees and finds that remand is warranted on this basis.

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d. Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

The ALJ must consider the following factors to determine how much weight to give the treating physician's opinion: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant but unspecified factors. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ is required to provide "good reasons" for the weight accorded to a treating physician's medical opinion; failure to do so is a ground for remand. *Schaal*, 134 F.3d at 503-05; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.")

However, the ultimate determination that a claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. § 404.1527(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell*, 177 F.3d at 133.

The ALJ's adherence to the treating physician rule operates in tandem with the affirmative duty to develop a full and fair record. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d)-(f) (setting forth the affirmative obligations of ALJs).

> ### i. *Dr. Varma*

Here, the ALJ's decision failed to address all of the relevant factors or set forth good reasons for declining to give controlling weight to Dr. Varma's findings. Indeed, the ALJ's stated reasons for declining to give controlling weight to Dr. Varma's findings do not withstand scrutiny. First, the ALJ suggested that Dr. Varma's opinion does not deserve controlling weight because an MRI scan performed by Dr. Varma showed no abnormalities; however, the ALJ failed to acknowledge that Dr. Varma's findings concerning Plaintiff's impairments were based on positive results from a Hallpike test and a Romberg test, not the MRI scan. (R. 225-26.) The ALJ is not at liberty to opine on the medical significance of the MRI test under these circumstances. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (holding that the "ALJ was not at liberty to substitute his own lay interpretation of [an MRI] diagnostic test for the uncontradicted testimony of [the treating physician], who is more qualified and better suited to opine as to the [MRI test's] medical significance"); *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (finding remand appropriate where "the ALJ plainly did not choose between properly

submitted medical opinions, but rather improperly set his own expertise against that of physicians who submitted opinions to him") (internal quotation marks and brackets omitted).

Second, the ALJ erred to the extent he discounted Dr. Varma's opinion for a failure to perform neuro-vestibular testing. Indeed, Dr. Varma's records indicate that, in addition to the MRI test, Dr. Varma noted the necessity of "neurovestibular [testing] including VNG testing," and had scheduled a VNG test.[4] (R. 221-25.) However, nothing in the record shows that the ALJ made any attempt to contact Dr. Varma to inquire about the status or result of the VNG test before discounting Dr. Varma's opinion. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Schaal*, 134 F.3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); *McClaney v. Astrue*, 2012 WL 3777413, at *16 (E.D.N.Y. Aug. 10, 2012) ("[I]f the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician.") (citation omitted).

Third, although the ALJ suggests that Dr. Varma's findings contain internal inconsistencies, the ALJ failed to identify those inconsistencies with any specificity. In its brief, the Commissioner suggests that Dr. Varma's opinion was internally inconsistent because Dr. Varma found Plaintiff had a "normal gait" December 7, 2010, but determined that Plaintiff had "gait imbalance" on February 9, 2011. (Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Reply Brief") at 3.) However, as the ALJ did not address this inconsistency

---

[4] Indeed, Plaintiff's testimony at the hearing also suggests that the VNG test had been scheduled. (R. 32.)

in his decision, the Court need not "accept . . . counsel's *post hoc* rationalization[]," *Snell*, 177 F.3d at 134, particularly where, as here, nothing in the record demonstrates that the ALJ made any attempt to clarify the perceived inconsistencies. *See Lazo-Espinoza v. Astrue*, 2012 WL 1031417, at *13 (E.D.N.Y. Mar. 27, 2012) ("[When] an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (internal quotation marks and citation omitted).

### ii. Dr. Fulco

Dr. Fulco, a non-examining medical expert, opined that Plaintiff could perform only "light work." (R. 208-13.) Nonetheless, the ALJ—despite assigning Dr. Fulco's opinion controlling weight—concluded Plaintiff could perform "a full range of work at all exertional levels."[5] (R. 15) *See Watson v. Callahan*, 1997 WL 746455, at *13 (S.D.N.Y. Dec. 2, 1997) ("To allow the ALJ to rely on one portion of a doctor's report in support of his finding of no disability but then discount another portion of the very same report . . . would be inconsistent."). However, the ALJ offered no explanation as to why he failed to consider this portion of Dr. Fulco's assessment.

Moreover, although "[t]he opinions of non-examining sources [may] override [a] treating sources' opinions provided they are supported by evidence of record," *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995), the record demonstrates that Dr. Fulco did not have access to all of the medical evidence when he rendered his opinion. Specifically, Dr. Fulco completed the

---

[5] Performing work at all exertional levels includes the performance of "very heavy work," which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567(e). In contrast, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

medical interrogatory on March 24, 2011; however, Plaintiff submitted additional medical documentation for the record after that date, including, most notably, an April 2011 assessment from Dr. Varma that provided additional detail and specificity concerning Plaintiff's physical impairments. (R. 28-30, 225-27.) Because the record does not indicate that Dr. Fulco ever received or reviewed these documents, on remand, the ALJ must account for this in reassessing the weight to be accorded Dr. Fulco's opinion.

In sum, because the ALJ failed to properly weigh and evaluate this medical evidence, remand is appropriate.

### b. Assessment of Plaintiff's Credibility

Plaintiff also asserts that the ALJ erred in determining Plaintiff's statements were not credible. (Pl. Mem. at 17-19.) The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2010). However, the ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996). Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the

individual's symptoms to determine the extent to which they limit the individual's ability to work.  20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p.

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors:  1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief . . . ."  *Correale-Englehart,* 687 F. Supp. 2d at 435.  Where the ALJ neglects to discuss at length his credibility determination and the reviewing court cannot decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate.  *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

In determining Plaintiff's credibility, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of

those symptoms were not credible "based on the objective medical record" and "to the extent they are inconsistent with the . . . residual functional capacity assessment." (R. 16.) The ALJ provided no further explanation; however, he was obligated to do so to allow for meaningful review. *See Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010) ("[T]o the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ *must* engage in a credibility inquiry.") (emphasis added); *McDonald v. Astrue*, 2011 WL 4629592, at *8 (E.D.N.Y. Sept. 30, 2011) ("If an ALJ rejects subjective testimony concerning pain, the ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.") (internal quotations and citation omitted). Here, while the ALJ recited various medical evidence, including Plaintiff's limited daily activities and Plaintiff's description of dizziness, headaches, and coughing (R. 16-20), he provided no analysis as to how these items—or any other 20 C.F.R. § 404.1529(c)(3) factors—led to his conclusory statement that Plaintiff's testimony concerning the intensity and limiting effects of her condition was not credible. *See Jones v. Astrue*, 2011 WL 3423771, at *23 (S.D.N.Y. July 15, 2011) (finding remand warranted where ALJ "provided a summary of [claimant's] testimony and therapy records, [but] did not explain how the record—or even which parts of the record—failed to support [claimant's] testimony").

Moreover, the ALJ did not indicate whether Plaintiff's prior work history factored into his credibility analysis. The Second Circuit has held that a claimant with a good work record is entitled to "substantial credibility" when claiming an inability to work because of a disability. *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (citing *Singletary v. Sec'y of Health, Educ. & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980)); *see also* 20 C.F.R. § 404.1529(c)(3) ("We

will consider all of the evidence presented, including information about your prior work record . . . ."). Here, Plaintiff has a considerable work history, having worked as a secretary at Campus Magnet for seventeen years prior to the onset of her disability. The ALJ should have considered this fact and clarified how it factored into his credibility determination. Therefore, while a prior work history does not automatically entitle Plaintiff to a positive credibility determination, the ALJ must explicitly consider it on remand in assessing Plaintiff's credibility. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011).

Accordingly, the Court remands this action so that the ALJ can properly evaluate Plaintiff's credibility.

### c.       Vocational Expert Testimony

Plaintiff also contends that the ALJ erred by failing to consult a vocational expert. (Pl. Mem. at 11-13.) At the fourth step of the five-step analysis, "the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original). "While an expert 'is often called upon' to explain the requirements of particular jobs, . . . step four of the analysis does not *require* that an ALJ consult an expert." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (emphasis in original). At the fifth step, however, the Commissioner bears the burden to show that there are other jobs in the national economy that the Plaintiff is capable of performing. *See Draegert*, 311 F.3d at 472 (citing *Carroll*, 705 F.2d at 642). To meet this burden, the Commissioner may utilize the Grids, 20 C.F.R. Pt. 404 Subpt. P, App. 2. *Rosa*, 168 F.3d at 78 (citing *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). The Grids account for the claimant's residual functional capacity, age, education, and work experience. *Id.* (citation omitted). However, if the plaintiff suffers from non-exertional

impairments[6] that "significantly diminish" the range of work permitted by his exertional limitations, then the application of the Grids is inappropriate. *Bapp*, 802 F.2d at 605-06; *see also* SSR 85–15, 1985 WL 56857, at *8 ("Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions. Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational specialist].").

Because the ALJ's reassessment of the record may affect his findings concerning Plaintiff's RFC, the severity of her non-exertional limitations, and her ability to perform past relevant work, a finding as to whether consultation with a vocational expert is required would be premature at this stage. Accordingly, on remand, the ALJ should, after reassessing Plaintiff's testimony and the medical evidence, obtain testimony from a vocational expert, if necessary.

---

[6] "A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Sobolewski*, 985 F. Supp. at 310 (citing 20 C.F.R. § 404.1569a (a), (c)).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and Plaintiff's cross-motion for judgment on the pleadings is granted. Accordingly, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. Specifically, on remand, the ALJ is to: (i) thoroughly assess the findings and the weight to be accorded to Dr. Varma, Plaintiff's treating physician, and Dr. Fulco, a non-examining source, after considering all of the relevant factors and any new information and evidence received; (ii) reassess Plaintiff's credibility and explain the weight given to Plaintiff's testimony in light of all of the relevant factors; and (iii) obtain the opinion of a vocational expert, if necessary.


SO ORDERED.

Dated: Brooklyn, New York
     March 26, 2013

                                                      */s/*
                                         DORA L. IRIZARRY
                                   United States District Judge